UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
ERIKA PHILLIPS,

                Plaintiff,                          **MEMORANDUM AND ORDER**

      v.                                         07-CV-1555 (NGG)

ST. GEORGE'S UNIVERSITY,

                Defendant.
------------------------------------------------------X

GARAUFIS, United States District Judge.

On June 15, 2007, Defendant St. George's University ("Defendant" or "SGU") moved to dismiss Plaintiff Erika Phillips's ("Plaintiff" or "Phillips") Complaint, which alleges discrimination on the basis of her sex, in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*. ("Title IX"). SGU argues that dismissal is warranted based on (1) lack of subject-matter jurisdiction, (2) lack of personal jurisdiction, (3) improper venue, (4) insufficiency of service of process, and (5) forum non conveniens. For the reasons set forth below, namely that this court lacks subject-matter jurisdiction over this dispute, Defendant's motion to dismiss is GRANTED.[1]

**I.    Background**

Phillips alleges the following in her April 16, 2007 Complaint, which for purposes of this motion, the court accepts as true. See Natural Res. Def. Council v. Johnson, 461 F.3d 164, 171

---

[1]The allegations set forth below, if true, are troubling. A University has an obligation to take very seriously such allegations from one of its student. Despite this court's lack of subject-matter jurisdiction over the lawsuit, it is my hope that SGU will take all necessary steps to address these allegations.

1

(2d Cir. 2006) (a court reviewing a motion to dismiss "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff") (citation omitted). Since December 7, 2005, Phillips has been enrolled in the SGU School of Veterinary Medicine, located in Grenada, West Indies. (Complaint (Docket Entry #1) at 2.) On September 30, 2006, Phillips was sexually harassed on SGU's Grenada campus by Ronald Antoine ("Antoine"), who was employed by SGU in the campus mailroom. Antoine made inappropriate comments to Phillips, touched and groped her, and forcefully pulled her towards him and kissed her, all while Phillips objected and tried to pull away. While retreating, Phillips instructed Antoine never to contact her again. (Id. at 2-3.) Phillips notified authorities of the harassment on October 2, 2006, and scheduled a meeting for October 4, 2006, with Dr. Zuri Amuleru-Marshall ("Dr. Marshall"), SGU Senior Associate Dean of Students. (Id. at 3.) On October 3, prior to Phillips's meeting with Dr. Marshall, Antoine telephoned Phillips and laughed about the sexual harassment that had occurred on September 30. Phillips told Antoine that she did not think the situation was funny and again instructed him not to contact her again. (Id.)

After being informed of the incident at the October 4 meeting, Dr. Marshall told Phillips she would immediately rectify the situation. Marshall never attempted to address the problem, however, and, on October 6 and 7, 2006, Phillips received a total of five more harassing telephone calls from Antoine. (Id. at 4.) Phillips then e-mailed Dr. Marshall about the continuing harassment and also informed Samasha, a campus security guard, of Antoine's actions and of her resulting fear for her well-being and safety. Samasha informed Phillips that she would notify her Captain, who would instruct Antoine to stop harassing Phillips. Nevertheless, Phillips received another harassing phone call from Antoine later that day. (Id. at 5.)

2

On October 8, 2006, Dr. Marshall contacted Phillips to inform her that she had not yet spoken to Antoine but would do so the next day. When Phillips asked why Dr. Marshall had not yet spoken to Antoine, Dr. Marshall told her to "suck it up." (Id. at 5.) On October 9, Phillips sought counseling at the SGU counseling center, where a counselor informed her that men in Grenada do and say things like that and that she should "get used to it." The head counselor then refused Phillips's request for a letter excusing her from her midterm examinations because he did not think she was under enough stress; Phillips failed one of her midterms. (Id. at 6.)

On October 20, 2006 Phillips attended a meeting with Dr. Marshall, Antoine, and others. During the meeting, Antoine laughed at Phillips and called her insane. Phillips believes that no one in the meeting took her sexual harassment complaints seriously and that Antoine has not been disciplined or instructed to stop harassing her. As a result of the stress of the harassment, Phillips failed two classes and was placed on academic probation. (Id. at 7.)

Phillips claims that Antoine's actions created an intimidating, hostile, abusive, and offensive educational environment that altered the conditions of her education, and that SGU failed to take corrective action to remedy the discrimination. (Id. at 8.) Her sole claim is that SGU's failure to take corrective action violated Title IX.

In the Complaint, Phillips states that SGU is a "domestic not-for-profit organization with offices located at One East Main Street, Bay Shore, New York, 11706-8399, within the Eastern District of New York." (Id. at 2.) In an affidavit attached to SGU's motion to dismiss, however, Allen Pensick, Provost of SGU, attests that: (1) SGU is a Grenadian corporation located in Grenada, West Indies, which is an independent nation and a member of the British Commonwealth of Nations; (2) SGU has no office, place of business, or postal address in the

State of New York; (3) SGU is not qualified, licensed, or registered to do business in the State of New York; (4) SGU does not maintain any bank accounts in the State of New York; and (5) SGU does not receive any funding from the government of the United States. (Defendant's Motion to Dismiss (Docket Entry #4), Attached Affidavit of Allen Pensick.) The court assumes for purposes of this motion that SGU maintains an office located in New York.

**II.     Discussion**

As noted above, Defendant has moved to dismiss on five separate grounds under Fed. R. Civ. P. 12(b). The question of subject-matter jurisdiction, discussed in detail below, is dispositive in this case.

"On a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction over the action." Czetwertynski v. United States, ---F. Supp. 2d---, No. 06 Civ. 4331, 2007 WL 2846358, at *1 (S.D.N.Y. Sept. 26, 2007). "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed. R. Civ. P. 12 (h)(3). A case that comes before a United States court involving conduct committed outside the United States raises the question of the court's subject-matter jurisdiction. See United States v. Yousef, 327 F.3d 56, 85 n.16 (2d Cir. 2003) ("By 'extraterritorial jurisdiction' we mean subject matter jurisdiction of a United States court to adjudicate conduct committed outside of the United States.").

In evaluating whether Title IX applies to Phillips's claims, "we begin with the 'legal presumption that Congress ordinarily intends its statutes to have domestic, not extraterritorial, application.'" Ofori-Tenkorang v. American Intern. Group, Inc., 460 F.3d 296, 301 (2d Cir.

4

2006) (quoting Small v. United States, 544 U.S. 385, 388-89 (2005)). Because of this presumption, "absent clear evidence of congressional intent to apply a statute beyond our borders, the statute will apply only to the territorial United States." Id. (citation omitted). To determine congressional intent, the court first looks to "whether language in [Title IX] gives any indication of a congressional purpose to extend its coverage beyond places over which the United States has sovereignty or has some measure of legislative control." Id. (quoting E.E.O.C. v. Arabian Am. Oil Co., 499 U.S. 244, 248 (1991) ("Aramco"). If necessary, the court may also consider "all available evidence about the meaning of the statute, including its . . . structure[ ] and legislative history." Id. (citation omitted). The fact that a party is incorporated in the United States, maintains offices in the United States, and conducts business in the United States is not sufficient to establish a statute's extraterritorial application to conduct occurring beyond the territorial limits of the United States, absent clear evidence of a congressional intent that the statute so apply. See Aramco, at 246-47. Finally, "courts must resolve restrictively any doubts concerning the extraterritorial application of a statute." ARC Ecology v. U.S. Dept. of Air Force, 411 F.3d 1092, 1097 (9th Cir. 2005) (citing Smith v. United States, 507 U.S. 197, 204 (1993)).

SGU argues that Title IX does not apply extraterritorially to the alleged conduct in this case, which occurred exclusively in Grenada at a Grenadian university. (Memorandum of Law in Support of Defendant's Motion to Dismiss ("Def.'s Br.") at 4.) In response, Phillips contends that subject-matter jurisdiction is founded upon the fact that Phillips was recruited by SGU in New York and paid SGU in New York. According to Phillips, "defendant availed itself of United States territory when it solicited Plaintiff, from New York, to apply to its University and did so by forwarding and receiving U.S. Mail and by accepting U.S. currency in the Eastern

5

District of New York, and by receiving Federal funds in New York, via Ms. Phillips Federal loans, which were payable to defendant." (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss (Docket Entry #6) at 9-10.) Phillips further argues that she is not requesting application of Title IX extraterritorially, but instead seeks its application to SGU as it conducts business in the United States. (Id. at 10-11.) In reply, SGU contends that Phillips "has failed to point to anything in Title IX to suggest that [C]ongress intended that [the] statute apply to students who are not enrolled in an educational institution located in the United States." (Reply Memorandum of Law in Further Support of Defendant's Motion to Dismiss (Docket Entry #10) at 3.)

     As an initial matter, Phillips's argument in the section of her brief devoted to subject-matter jurisdiction appears to confuse the question of subject-matter jurisdiction with that of personal jurisdiction. Subject-matter jurisdiction and personal jurisdiction are distinct concepts, however, with the former "concerned with the kinds of cases the federal district courts are empowered to decide" and the latter "concerned with the relationship of a given defendant to the particular geographic area in which a case is brought." United States ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd., 110 F.3d 861, 864 (2d Cir. 1997). Phillips's arguments with respect to SGU's contacts with New York, therefore, are largely irrelevant to whether this court has subject-matter jurisdiction over a Title IX claim involving acts occurring exclusively in Grenada at a Grenadian university. Indeed, such a "balancing of contacts" test has been found to be inappropriate for determining whether a statute applies extraterritorially, even where parties have substantial contacts with the United States. See, e.g., McCulloch v. Sociedad Nacional de Marineros de Honduras, 372 U.S. 10, 19 (1963); Asplundh Tree Expert Co. v. NLRB, 365 F.3d

168, 178 (3d Cir. 2004).

In addition, the fact that SGU maintains an office in New York is insufficient to establish that Title IX applies to the discrimination alleged in this case. In <u>Aramco</u>, the Supreme Court held that Title VII did not apply extraterritorially to a United States citizen employed abroad by an American employer. <u>Id.</u> at 247, 259. The employer's principal place of business was Dharan, Saudi Arabia, it was licensed to do business in Houston, Texas, and its subsidiary's principal place of business was in Houston; the alleged violation of Title VII occurred when the employee was employed at the parent company's Saudi Arabia offices. <u>Id.</u> at 247. The Court did not discuss the defendants' contacts or presence in the United States, but instead focused solely on whether there was evidence of a congressional intent that the statute apply to activity occurring in Saudi Arabia. <u>See generally</u> <u>id.</u> at 247-59. Similarly, in <u>New York Central R. Co. v. Chisholm</u>, 268 U.S. 29, 45 (1925), the Court found that the Federal Employers' Liability Act ("FELA") did not disclose an intention to give the statute extraterritorial effect, and therefore there was no jurisdiction under FELA for a damages action by a United States citizen employed on a United States railroad who suffered fatal injuries thirty miles north of the United States border into Canada. Thus, this court's task is to determine whether Congress intended Title IX to apply extraterritorially to activity occurring in Grenada.

Turning to that question, this court agrees with SGU that nothing in the statute's plain language indicates such an intent. The statute reads in relevant part: "No person in the United States shall, on the basis of sex, be excluded from participation in, denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. Although neither this circuit nor any other circuit has decided

7

whether Title IX applies extraterritorially, the Second Circuit recently held that 42 U.S.C. § 1981 did not apply extraterritorially to conduct that occurred while a plaintiff was living and working in South Africa because the statute's text manifested "Congress's intent to confer on 'persons within the jurisdiction of the United States . . . the same [enumerated] right[s] in every State and Territory.'" Ofori-Tenkorang, 460 F.3d at 298, 301 (quoting 42 U.S.C. § 1981(a)). As the Court concluded, "[f]ar from evincing any intent on the part of Congress to apply [the] statute beyond our borders, the language of Section 1981 unambiguously confirms the opposite." Id. (internal quotation marks and citation omitted).

Similarly, in a recent case in the Seventh Circuit considering whether a writ of execution could attach to a foreign property pursuant to the Foreign Sovereign Immunities Act ("FSIA"), the court noted that "[i]t is also of no small moment that the FSIA authorizes execution only against properties 'in the United States.'" Autotech Tech. v. Integral Research & Dev. Corp., 499 F.3d 737, 749-50 (7th Cir. 2007). The court stated that the FSIA did not purport to authorize execution against a foreign sovereign's property "wherever that property is located around the world. We would need some hint from Congress before we felt justified in adopting such a breathtaking assertion of extraterritorial jurisdiction." Id. at 750.

Following the instructive analysis in Ofori-Tenkorang and Autotech, I find that the plain language of Title IX affirmatively indicates Congress's intent that the statute not apply extraterritorially. As in Autotech, Title IX's use of "person in the United States" suggests that the statute applies only to persons located in the United States. Even assuming the phrase "in the United States" is not dispositive on the issue, there is no contrary language—much less "clear evidence"—in the statute to suggest Congress intended Title IX to apply extraterritorially. See

8

Aramco, 499 U.S. at 258 ("Congress' awareness of the need to make a clear statement that a statute applies overseas is amply demonstrated by the numerous occasions on which it has expressly legislated the extraterritorial application of a statute."). Moreover, Phillips has not pointed to any evidence in the structure or legislative history of Title IX, and this court has found none, to suggest a different conclusion.

Based upon this court's independent research, it appears that SGU is correct in identifying only one federal case to address Title IX's extraterritorial application. In King v. Bd. of Control of Mich. Univ., 221 F. Supp. 2d 783 (E.D. Mich. 2002), the court held that Title IX applied to students at Eastern Michigan University ("EMU") who participated in EMU's five-week study abroad program in South Africa. 221 F. Supp. 2d at 784. Focusing on the language in Title IX prohibiting discrimination "under any education program," the court noted that study abroad programs "are operations of the University" and that Title IX "sweeps within its scope every single university education program." Id. at 788. In addition, the court pointed to legislative history indicating Title IX's protection against "discrimination of available services or studies within an institution once students are admitted." Id. at 789. Finally, the court stated that the plaintiffs, as students of EMU, were entitled to Title IX's protection particularly "where the programs were always under the control of Eastern Michigan University in every respect, rather than under the control of any foreign educational facility." Id. at 791.

The court agrees with SGU that this case is clearly distinguishable. In contrast to the EMU study abroad program at issue in King, Phillips was attending SGU in Grenada, alleged that she was harassed by an SGU employee in Grenada, and that SGU employees ignored her complaints in Grenada. Even assuming the King outcome was correct on its facts, it is not

9

persuasive given the distinguishable facts of this case.

Finally, as for Phillips's argument that Title IX applies to SGU because SGU receives federal assistance, this court has not found any support for the notion that Phillips's receipt of federal loan money constitutes federal assistance to SGU for purposes of Title IX. Even assuming, *arguendo*, that it does, that fact would not affect the court's conclusion on Title IX's extraterritorial reach. While the "receiving Federal financial assistance" requirement of Title IX is clearly a prerequisite for application of the statute, the receipt of federal assistance does not change Title IX's explicit application to persons "in the United States," nor does it constitute evidence of a congressional intent that Title IX apply to conduct occurring wholly outside the territory of the United States. Phillips's argument, for which she offers no support, is unavailing.

Therefore, I conclude that Congress did not intend Title IX to apply extraterritorially, see Carnero v. Boston Scientific Corp., 433 F.3d 1, 7 (1st Cir. 2006) ("Where, as here, a statute is silent as to its territorial reach, and no contrary congressional intent clearly appears, there is generally a presumption against its extraterritorial application"), and that the single case in which a federal district court arguably reached the opposite conclusion is clearly distinguishable on its facts. Thus, Phillips has not met her burden of showing that this court has subject-matter jurisdiction over this case.

**III.    Conclusion**

For the foregoing reasons, SGU's motion to dismiss is GRANTED based on this court's lack of subject-matter jurisdiction over Phillips's Title IX claim.  Because a lack of subject-matter jurisdiction requires dismissal, <u>see</u> Fed. R. Civ. P. 12 (h)(3), I decline to reach SGU's additional bases for dismissal.  The Clerk of Court is directed to close the case.


SO ORDERED.

|  |  |
|---|---|
| Dated: November 15, 2007<br>Brooklyn, N.Y. | <u>  /s Nicholas G. Garaufis     </u><br>NICHOLAS G. GARAUFIS<br>United States District Judge |